Joshua H. Reisman, Esq.
Nevada Bar No. 7152
Robert R. Warns, Esq.
Nevada Bar No. 12123
REISMAN·SOROKAC
8965 South Eastern Avenue, Suite 382
Las Vegas, Nevada 89123
Telephone: (702) 727-6258
Facsimile: (702) 446-6756
Email: jreisman@rsnvlaw.com
Email: rwarns@rsnvlaw.com

Attorneys for Plaintiff Brett Axelrod

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BRETT AXELROD, an individual, | CIVIL ACTION NO. 2:13-cv-01289 |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| GEORGE L. KLANDER, an individual, and MONEY MANAGEMENT ADVISORY, INC., a Pennsylvania corporation; DOE INDIVIDUALS 1 through 10; and ROE CORPORATIONS 11 through 20, | |
| Defendants. | |

**COMPLAINT**

Plaintiff Brett Axelrod, an individual, by and through her attorneys, Joshua H. Reisman, Esq., and Robert R. Warns III, Esq., of the law firm of Reisman Sorokac, hereby complains against Defendants George L. Klander, an individual; Money Management Advisory, Inc., a Pennsylvania corporation; Doe Individuals 1 through 10; and Roe Corporations 11 through 20, as follows:

/ / /

1

## JURISDICTION, VENUE AND PARTIES

1. Plaintiff Brett Axelrod ("Plaintiff" or "Ms. Axelrod") is, and at all relevant times was, a citizen of the state of Nevada, residing in Clark County, Nevada.

2. On information and belief, Defendant George L. Klander ("Mr. Klander") is, and at all relevant times was, a citizen of the state of Maryland, residing in Glen Burnie, Maryland.

3. On information and belief, Defendant Money Management Advisory, Inc. ("MMAI") (Mr. Klander and MMAI are referred to, collectively, as "Defendants"), is, and at all relevant times was, a Pennsylvania corporation organized and existing under the laws of the state of Pennsylvania with its principal place of business in Feasterville, Pennsylvania.

4. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants Doe Individuals 1 through 10 and Roe Corporations 11 through 20 ("Doe/Roe Defendants"), inclusive, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this Complaint accordingly.

5. On information and belief, among other things, Doe/Roe Defendants participated in the acts, omissions, misrepresentations, misstatements, violations, advice, services, investments, breaches, Unauthorized Withdrawals, Investment Accounts, and conduct, as described herein; Doe/Roe Defendants include, but are not limited to, employees, representatives and/or agents of Defendants, investment advisors, representatives of investment advisors, brokers, dealers, investment advisory firms, brokerage firms, broker-dealers, registered representatives, issuers, and their agents, servants, representatives, employees, partners, joint venturers, related companies, subsidiaries, parents, affiliates, predecessors, and/or successors in interest.

6. On information and belief, Doe/Roe Defendants are either responsible in some manner for the events and happenings referred to herein, and/or are liable to Plaintiff for the injuries and damages owing to Plaintiff as hereinafter alleged.

/ / /

2

7. On information and belief, Doe/Roe Defendants were involved in the initiation, approval, support or execution of the wrongful acts upon which this litigation is premised, or of similar actions against Plaintiff of which Plaintiff is presently unaware.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs, and the action is between citizens of different states, and pursuant to 28 U.S.C. § 1331 because Plaintiff is bringing claims arising under the Constitution, laws or treaties of the United States.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## GENERAL ALLEGATIONS

10. Mr. Klander is a broker-dealer ("Broker"), investment adviser and registered investment adviser representative and, on information and belief, has been working as a Broker since at least the mid-1980s.

11. MMAI is a brokerage firm and an investment adviser firm.

12. On information and belief, Mr. Klander has been employed with MMAI since 1986 and has been a vice-president of MMAI since October 1992.

13. On information and belief, at all relevant times herein, Mr. Klander was a vice-president, registered principal, shareholder, and employee of MMAI, and the manager of MMAI's Annapolis, Maryland, and Princeton, West Virginia, offices.

14. On information and belief, at all relevant times, MMAI supervised Mr. Klander and controlled both the details and methods of performance of Mr. Klander's work as MMAI's employee.

15. On information and belief, in acting as Ms. Axelrod's Broker, Mr. Klander was, at all relevant times, acting within the course and scope of his employment with MMAI.

16. On information and belief, at all relevant times, Mr. Klander's actions and inactions complained of herein occurred within the course and scope of his employment with MMAI.

17. On information and belief, among other qualifications, Mr. Klander holds and/or has held the following licenses, and/or has passed the following industry examinations: Series 5 (Interest Rate Options Examination); Series 7 (General Securities Representative Examination); Series 24 (General Securities Principal Examination); Series 63 (Uniform Securities Agent State Law Examination); and Series 66 (Uniform Combined State Law Examination).

18. At all relevant times herein, Ms. Axelrod was married to Lars Klander ("L. Klander").

19. L. Klander is Mr. Klander's son. Accordingly, at all relevant times herein, Mr. Klander was Ms. Axelrod's father-in-law.

20. In or around the spring of 2005, in large part because of the close familial relationship between Ms. Axelrod and Mr. Klander, Ms. Axelrod and Defendants agreed that Defendants would act as her Broker, taking on a substantial and comprehensive advisory role. Among other things, they advised her regarding the value of securities, the advisability of investing in, purchasing, or selling securities, and made recommendations regarding financial and retirement planning.

21. Prior to engaging Defendants as her Broker, Ms. Axelrod and Defendants discussed that she had neither the time nor desire to track all of her investments, and that she was looking for an investment advisor who would advise her how to reach her specific retirement goals and would, with that in mind, select and monitor such investments.

22. In the spring of 2005, in meetings between Mr. Klander and Ms. Axelrod, which took place in Nevada, in telephone conferences between them, with Ms. Axelrod communicating from Nevada, and in MMAI materials provided to Ms. Axelrod by Mr. Klander, in Nevada, Defendants represented, among other things, that they: (1) would meet with Ms. Axelrod twice per year to discuss her investments; (2) would consistently review and monitor her investments; and (3) would regularly communicate with her regarding her investments.

4

23. Thereafter, Defendants acted as Ms. Axelrod's Broker and trusted financial advisor.

24. In acting as Ms. Axelrod's Broker and trusted financial advisor, Defendants undertook a substantial and comprehensive advisory role, in which, among other things, Defendants advised Ms. Axelrod regarding mutual funds, life insurance products, retirement planning, the benefits of Roth IRAs versus non-Roth IRAs, investments in gold versus bonds, and what emerging markets were up and coming. Accordingly, Defendants were not just a passive Broker taking orders.

25. When Ms. Axelrod changed jobs, Defendants handled "rolling over" her 401K accounts and advised her regarding the selection of new investments.

26. During the term that Defendants acted as Ms. Axelrod's Broker and trusted financial advisor, among other things: Ms. Axelrod and Mr. Klander traveled to Italy and Ireland together; they took family trips together, including to Washington DC and West Virginia; Ms. Axelrod visited Mr. Klander in Maryland; and they saw each other at least twice a year in Las Vegas from 1996 through 2011.

27. Because of Defendants' representations to her, her close familial relationship with her father-in-law, Mr. Klander, and the nature of their interactions throughout the course of Defendants' performance of their duties, at all relevant times, Ms. Axelrod had a closer than arms-length relationship with Defendants; and a special level of trust and confidence existed between Defendants and Ms. Axelrod regarding the performance of their duties as her Broker and financial advisor.

28. Because of Defendants' representations to her, her familial relationship with Mr. Klander, and the nature of their interactions throughout the course of Defendants' performance of their duties, at all relevant times, Ms. Axelrod trusted Defendants to monitor the performance of her investments and to recommend appropriate financial plans to her.

29. As her Broker, Defendants advised Ms. Axelrod to invest in mutual funds sponsored by Franklin Templeton Investments ("Franklin").

30. Thereafter, Defendants set up and managed retirement and non-retirement accounts (the "Investment Accounts") with Franklin on Ms. Axelrod's behalf.

31. On information and belief, all of the mutual funds purchased from Franklin were A-Shares mutual funds, which require the pre-payment of all fees.

32. In or around the spring of 2005, Ms. Axelrod began investing in the Investment Accounts.

33. On information and belief, Defendants set up the Investment Accounts to purchase Franklin mutual funds they had advised Ms. Axelrod to invest in, using monies that had been transferred, automatically or otherwise, into the Investment Accounts.

34. Such investments occurred, pursuant to their advice, from the spring of 2005 until 2012.

35. During the term that Defendants acted as Ms. Axelrod's Broker and trusted financial advisor, approximately ninety-nine (99) unauthorized withdrawals, totaling in excess of $463,562.00, were made from Ms. Axelrod's Investment Accounts (the "Unauthorized Withdrawals"). Twenty-one (21) of the Unauthorized Withdrawals were premature withdrawals from retirement accounts and seventy-eight (78) were from non-retirement accounts.

36. On information and belief, L. Klander unlawfully made the Unauthorized Withdrawals.

37. On information and belief, Mr. Klander conspired with L. Klander—his son—to facilitate and conceal from Ms. Axelrod the Unauthorized Withdrawals.

38. On information and belief, at all relevant times, Mr. Klander was aware of the Unauthorized Withdrawals and facilitated, cooperated with and actively concealed the withdrawals from Ms. Axelrod, both to protect his son, L. Klander, and to continue earning commission fees from the purchases of the mutual funds.

39. Given the type of investments involved, the timing and frequency of the Unauthorized Withdrawals made it impossible for Ms. Axelrod to earn any return on her

6

investments. In fact, by the time Ms. Axelrod discovered the Unauthorized Withdrawals, there was almost no money left in her Investment Accounts, let alone any return on her investments.

40. As Ms. Axelrod is younger than 59 ½ years old, negative tax consequences also resulted from the premature Unauthorized Withdrawals from her retirement accounts.

41. During the period of the Unauthorized Withdrawals, on information and belief, among other things, Defendants failed to: (1) adequately review the Investment Accounts; (2) adequately monitor the activity in the Investment Accounts; (3) alert Ms. Axelrod of the Unauthorized Withdrawals; (4) adequately investigate the Unauthorized Withdrawals; (5) take the steps necessary to prevent the ongoing Unauthorized Withdrawals; (6) address the Unauthorized Withdrawals with Ms. Axelrod when communicating with her; (7) advise Ms. Axelrod of the negative investment and tax consequences associated with the Unauthorized Withdrawals; (8) inform Ms. Axelrod that, in part, as a result of the Unauthorized Withdrawals, the Investment Accounts were unbalanced; and (9) appropriately re-balance the Investment Accounts in response to the Unauthorized Withdrawals.

42. Also during this period, Defendants failed to meet with Ms. Axelrod two times per year to discuss her investments; and when they did communicate with her—which was usually infrequent and via telephone or email—they consistently assured her that her Investment Accounts were doing fine.

43. On information and belief, Defendants also failed to obtain reduced fees from Franklin based upon break-points that Ms. Axelrod was entitled to given the amounts she was investing.

44. Ms. Axelrod first discovered the Unauthorized Withdrawals in August 2012, when L. Klander admitted to Ms. Axelrod that he had drained her accounts. Ms. Axelrod immediately thereafter retained a new Broker/financial advisor, and that person, in getting up to speed on the status of Ms. Axelrod's investments, discovered that there was almost no money in the Investment Accounts. Ms. Axelrod had not, and could not have, discovered the Unauthorized Withdrawals sooner, because, among other reasons: (1) within the marital relationship, Ms. Axelrod and L.

7

Klander had agreed that because she was the primary bread-winner, L. Klander would be responsible for monitoring her finances, including her investments with Defendants; (2) on information and belief, Mr. Klander and L. Klander had actively concealed the withdrawals; and (3) on information and belief, despite his knowledge of the Unauthorized Withdrawals, Mr. Klander had failed to disclose the same to her.

## **FIRST CLAIM FOR RELIEF**

### **(Professional Negligence Against Defendants)**

45. Ms. Axelrod repeats and realleges each and every allegation contained in paragraphs 1 through 44 as though fully set forth herein.

46. Defendants owed Ms. Axelrod the duty of a professional Broker to use such skill, prudence, and diligence as other members of their profession commonly possess and exercise.

47. On information and belief, Defendants breached that duty by, among other things, failing to: (1) adequately review the Investment Accounts; (2) adequately monitor the activity in the Investment Accounts; (3) alert Ms. Axelrod of the Unauthorized Withdrawals; (4) adequately investigate the Unauthorized Withdrawals; (5) take the steps necessary to prevent the ongoing Unauthorized Withdrawals; (6) address the Unauthorized Withdrawals with Ms. Axelrod when communicating with her and, instead, assuring her that her Investment Accounts were doing fine; (7) advise Ms. Axelrod of the negative investment and tax consequences associated with the Unauthorized Withdrawals; (8) appropriately re-balance the Investment Accounts in response to the Unauthorized Withdrawals; and (9) obtain available reduced fees from Franklin related to applicable break-points.

48. On information and belief, Mr. Klander further breached that duty by recommending investments to Ms. Axelrod that were unsuitable for her investment objectives, in light of the Unauthorized Withdrawals and Mr. Klander's awareness thereof.

49. Defendants' breaches of these duties were the legal cause of Ms. Axelrod's injuries.

50. As a result of Defendants' professional negligence, Ms. Axelrod has suffered damages in excess of $75,000.00.

51. Ms. Axelrod has been required to retain the services of counsel to prosecute this matter and, as such, is entitled to an award of her reasonable costs and attorney's fees incurred herein.

## SECOND CLAIM FOR RELIEF

### (Negligent Supervision Against MMAI)

52. Ms. Axelrod repeats and realleges each and every allegation contained in paragraphs 1 through 51 as though fully set forth herein.

53. On information and belief, Mr. Klander was an employee of MMAI and acted under its control.

54. On information and belief, MMAI supervised Mr. Klander and controlled both the details and methods of performance of Mr. Klander's work as MMAI's employee.

55. MMAI owed a duty of care to Ms. Axelrod to ensure that Mr. Klander, its employee, was properly supervised in the performance of his position at MMAI.

56. MMAI breached that duty by, among other things, failing to ensure that Mr. Klander was properly performing his duties as Ms. Axelrod's Broker and financial advisor.

57. MMAI's breaches of its duty of supervision were the legal cause of Ms. Axelrod's injuries.

58. As a result of MMAI's negligent supervision, Ms. Axelrod has suffered damages in excess of $75,000.00.

59. Ms. Axelrod has been required to retain the services of counsel to prosecute this matter and, as such, is entitled to an award of her reasonable costs and attorney's fees incurred herein.

## THIRD CLAIM FOR RELIEF

### (Breach of Fiduciary Duty Against Defendants)

60. Ms. Axelrod repeats and realleges each and every allegation contained in paragraphs 1 through 59 as though fully set forth herein.

61. Defendants owed Ms. Axelrod a fiduciary duty as her Broker.

62. On information and belief, Defendants breached that duty by, among other things, failing to: (1) adequately review the Investment Accounts; (2) adequately monitor the activity in the Investment Accounts; (3) alert Ms. Axelrod of the Unauthorized Withdrawals; (4) adequately investigate the Unauthorized Withdrawals; (5) take the steps necessary to prevent the ongoing Unauthorized Withdrawals; (6) address the Unauthorized Withdrawals with Ms. Axelrod when communicating with her and, instead, assuring her that her Investment Accounts were doing fine; (7) advise Ms. Axelrod of the investment and tax consequences associated with the Unauthorized Withdrawals; (8) appropriately re-balance the Investment Accounts in response to the Unauthorized Withdrawals; and (9) obtain available reduced fees from Franklin related to applicable break-points.

63. On information and belief, Defendants further breached their fiduciary duty by, among other things: (1) cooperating with and/or facilitating the Unauthorized withdrawals; (2) concealing the Unauthorized Withdrawals from Ms. Axelrod; (3) advising Ms. Axelrod to continue investing in the Franklin mutual funds when they knew that L. Klander was making the Unauthorized Withdrawals; and (4) misrepresenting to Ms. Axelrod the status of her Investment Accounts in light of the Unauthorized Withdrawals.

64. Ms. Axelrod sustained damages in excess of $75,000.00 as a proximate cause of Defendants' breaches of fiduciary duty.

65. On information and belief, Defendants have been guilty of oppression, fraud and/or malice, express or implied; and Ms. Axelrod may recover damages for the sake of example and by way of punishing them.

66. Ms. Axelrod has been required to retain the services of counsel to prosecute this matter and, as such, is entitled to an award of her reasonable costs and attorney's fees incurred herein.

/ / /

/ / /

/ / /

## FOURTH CLAIM FOR RELIEF

**(Violation of Nevada's Deceptive Trade Practices Act, N.R.S. §§ 598.0903 *et seq.*, Against Defendants)**

67. Ms. Axelrod repeats and re-alleges each and every allegation contained in Paragraphs 1 through 66 as though fully set forth herein.

68. An action may be brought under N.R.S. § 41.600 by any person who is a victim of a deceptive trade practice as defined in N.R.S. §§ 598.0915 to 598.0925, inclusive.

69. Defendants engaged in deceptive trade practices under N.R.S. § 598.0915 because in the course of their business or occupation, they: (1) knowingly made false representations in transactions.

70. Defendants also engaged in deceptive trade practices under N.R.S. § 598.092(5) because in the course of their business or occupation, they advertized or offered an opportunity for investment and made untrue statements of a material facts.

71. Defendants further engaged in deceptive trade practices under N.R.S. § 598.0923 because in the course of their business or occupation, they knowingly: (1) failed to disclose material facts in connection with the sale of services; and (2) violated state or federal statutes or regulations relating to the sale of services.

72. On information and belief, among other deceptive trade practices, Defendants misrepresented to Ms. Axelrod: (1) that the Investment Accounts were doing fine; and (2) the status of the Investment Accounts; and (3) that she would reach her investment and retirement goals if she continued investing pursuant to their advice.

73. On information and belief, among other deceptive trade practices, Defendants failed to disclose to Ms. Axelrod: (1) that the Investment Accounts were experiencing substantial, ongoing, Unauthorized Withdrawals; (2) that, in light of the ongoing Unauthorized Withdrawals, she would be unable to meet or obtain her investment objectives and (3) the fact that the ongoing Unauthorized Withdrawals would result in negative investment and tax consequences.

74. Defendants' deceptive trade practices were the legal cause of Ms. Axelrod's injuries.

75. As a result of Defendants' deceptive trade practices, Ms. Axelrod has suffered damages in excess of $75,000.00.

76. Defendants have been guilty of oppression, fraud and/or malice, express or implied; and Ms. Axelrod may recover damages for the sake of example and by way of punishing them.

77. Ms. Axelrod has been required to retain the services of counsel to prosecute this matter and, pursuant to N.R.S. § 41.600(3), is entitled to an award of her costs and reasonable attorney's fees incurred herein.

## FIFTH CLAIM FOR RELIEF

### (Negligent Misrepresentation Against Defendants)

78. Ms. Axelrod repeats and re-alleges each and every allegation contained in Paragraphs 1 through 77 as though fully set forth herein.

79. Defendants in the course of an action in which they had a pecuniary interest, failed to exercise reasonable care or competence in obtaining or communicating information to Ms. Axelrod.

80. On information and belief, in soliciting Ms. Axelrod to become a client and/or in rendering broker-dealer and/or financial advisory services, Defendants, among other things, misstated: (1) their future level of oversight of Ms. Axelrod's investments; (2) their future level of communication with Ms. Axelrod regarding her investments; (3) that they would meet with Ms. Axelrod twice per year regarding her investments; and (4) that the Investment Accounts were doing fine.

81. On information and belief, among other things, in their ongoing communications with Ms. Axelrod, Defendants omitted: (1) that the Investment Accounts were experiencing substantial, ongoing, Unauthorized Withdrawals; (2) that, in light of the ongoing Unauthorized Withdrawals, she would be unable to meet or obtain her investment objectives and (3) the fact that the ongoing Unauthorized Withdrawals would result in negative investment and tax consequences.

82. Given Defendants' considerable experience and qualifications, their representations to her regarding the scope of the services they would provide as her Broker, and the familial relationship between Ms. Axelrod and Mr. Klander, Ms. Axelrod justifiably relied on this information in engaging Defendants, in using their professional services and in continuing to invest pursuant to their advice.

83. As a result of Defendants' negligent misrepresentations, Ms. Axelrod suffered damages in excess of $75,000.00.

84. Ms. Axelrod has been required to retain the services of counsel to prosecute this matter and, as such, is entitled to an award of her reasonable costs and attorney's fees incurred herein.

## SIXTH CLAIM FOR RELIEF

**(Fraudulent or Intentional Misrepresentation Against Defendants)**

85. Ms. Axelrod repeats and re-alleges each and every allegation contained in Paragraphs 1 through 84 as though fully set forth herein.

86. Defendants, through Mr. Klander, made false representations to Ms. Axelrod.

87. Throughout 2005 through 2012, in telephone conversations, via email and in person, Defendants, through Mr. Klander, misrepresented, among other things: (1) that the Investment Accounts were doing fine; (2) that Ms. Axelrod would reach her investment and retirement goals if she continued investing in the ways that Defendants were advising her; (3) the status of the Investment Accounts.

88. Defendants knew or believed that the representations were false, or Defendants had an insufficient basis of information for making the representations, in that, among other reasons, on information and belief, Mr. Klander knew that his son, L. Klander, was making the ongoing Unauthorized Withdrawals.

89. Defendants intended to induce Ms. Axelrod to act or refrain from acting upon the misrepresentations.

90. Ms. Axelrod justifiably relied upon the misrepresentations.

13

91. Ms. Axelrod sustained damages in excess of $75,000.00 as a result.

92. On information and belief, Defendants have been guilty of oppression, fraud and/or malice, express or implied; and Ms. Axelrod may recover damages for the sake of example and by way of punishing them.

93. Ms. Axelrod has been required to retain the services of counsel to prosecute this matter and, as such, is entitled to an award of her reasonable costs and attorney's fees incurred herein.

### SEVENTH CLAIM FOR RELIEF

**(Aiding and Abetting Against MMAI)**

94. Ms. Axelrod repeats and re-alleges each and every allegation contained in Paragraphs 1 through 93 as though fully set forth herein.

95. On information and belief, MMAI substantially assisted or encouraged Mr. Klander's conduct in breaching his duties to Ms. Axelrod, as described herein.

96. As a result of MMAI's aiding and abetting of Mr. Klander's breaches of his duties, Ms. Axelrod sustained damages in excess of $75,000.00.

97. Ms. Axelrod has been required to retain the services of counsel to prosecute this matter and, as such, is entitled to an award of her reasonable costs and attorney's fees incurred herein.

### EIGHTH CLAIM FOR RELIEF

**(Conspiracy Against Mr. Klander)**

98. Ms. Axelrod repeats and re-alleges each and every allegation contained in Paragraphs 1 through 97 as though fully set forth herein.

99. On information and belief, Mr. Klander, by acting in concert with L. Klander, intended to accomplish the unlawful objectives of, among other things, breach of fiduciary duty and fraudulent or intentional misrepresentation, for the purpose of harming Ms. Axelrod.

100. As a result of Mr. Klander's acts, Ms. Axelrod has sustained damages in an amount in excess of $75,000.00.

101. On information and belief, Mr. Klander has been guilty of oppression, fraud and/or malice, express or implied; and Ms. Axelrod may recover damages for the sake of example and by way of punishing him.

102. Ms. Axelrod has been required to retain the services of counsel to prosecute this matter and, as such, is entitled to an award of her reasonable costs and attorney's fees incurred herein.

### NINTH CLAIM FOR RELIEF

**(Concert of Action Against Mr. Klander)**

103. Ms. Axelrod repeats and re-alleges each and every allegation contained in Paragraphs 1 through 102 as though fully set forth herein.

104. On information and belief, Mr. Klander acted with L. Klander to commit torts, while acting in concert or pursuant to a common design.

105. As a result of Mr. Klander's concerted action, Ms. Axelrod has suffered damages in an amount in excess of $75,000.00.

106. On information and belief, Mr. Klander has been guilty of oppression, fraud and/or malice, express or implied; and Ms. Axelrod may recover damages for the sake of example and by way of punishing him.

107. Ms. Axelrod has been required to retain the services of counsel to prosecute this matter and, as such, is entitled to an award of her reasonable costs and attorney's fees incurred herein.

### TENTH CLAIM FOR RELIEF

**(Violation of Section 10(b) of the 1934 Exchange Act and Rule 10b-5 Against Mr. Klander)**

108. Ms. Axelrod repeats and re-alleges each and every allegation contained in Paragraphs 1 through 107 as though fully set forth herein.

109. Under 15 U.S.C. § 78j(b), it is unlawful "for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]"

110. Under 17 C.F.R. § 240.10b-5, "[i]t shall be unlawful for any person ... (a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

111. Mr. Klander made material misrepresentations and omissions of fact.

112. On information and belief, although Mr. Klander was aware of the ongoing Unauthorized Withdrawals, in his communications with Ms. Axelrod regarding the status of the Investment Accounts and his recommendations for investments in securities, he omitted these facts.

113. These omissions occurred throughout 2006 through 2012 in communications with Ms. Axelrod via telephone, email and/or in person.

114. On information and belief, although Mr. Klander was aware of the ongoing Unauthorized Withdrawals, in his communications with Ms. Axelrod regarding the status of the Investment Accounts and his recommendations for investments in securities, he misrepresented that the Investment Accounts were doing fine.

115. These misrepresentations occurred throughout 2006 through 2012 in communications with Ms. Axelrod via telephone, email and/or in person.

116. Mr. Klander engaged in an act, practice or course of business, which operated as a fraud or deceit upon Ms. Axelrod, in connection with the purchase or sale of a security, by facilitating, cooperating with and intentionally concealing the Unauthorized Withdrawals from her.

117. In making the material misrepresentations and omissions of fact, Mr. Klander intended to deceive, manipulate and/or defraud Ms. Axelrod, in that Mr. Klander made the false or misleading statements and omissions intentionally or with deliberate recklessness.

118. Mr. Klander's material misrepresentations and omissions of fact were in connection with the purchase or sale of securities, i.e., among other things, the ongoing purchase of Franklin mutual funds.

119. Ms. Axelrod relied upon Mr. Klander's material misrepresentations and omissions of fact and, as a result thereof, Ms. Axelrod continued to deposit money into the Investment Accounts and to purchase Franklin mutual funds.

120. As a result of Mr. Klander's material misrepresentations and omissions of fact, Ms. Axelrod suffered economic loss damages in excess of $75,000.00.

121. Ms. Axelrod has been required to retain the services of counsel to prosecute this matter and, as such, is entitled to an award of her reasonable costs and attorney's fees incurred herein.

## ELEVENTH CLAIM FOR RELIEF

### (Control Person Liability Against MMAI)

122. Ms. Axelrod repeats and re-alleges each and every allegation contained in Paragraphs 1 through 121 as though fully set forth herein.

123. Under 15 U.S.C. § 78t(a), "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . ."

124. As alleged above, Mr. Klander committed violations of Rule 10b-5.

125. On information and belief, MMAI directly or indirectly controlled Mr. Klander.

126. Accordingly, MMAI is jointly and severally liable for Mr. Klander's violations of Rule 10b-5.

127. Ms. Axelrod has been required to retain the services of counsel to prosecute this matter and, as such, is entitled to an award of her reasonable costs and attorney's fees incurred herein.

/ / /

## TWELFTH CLAIM FOR RELIEF

**(Respondeat Superior against MMAI)**

128. Ms. Axelrod repeats and realleges each and every allegation contained in paragraphs 1 through 126 as though fully set forth herein.

129. On information and belief, Mr. Klander was an employee of MMAI and acted under its control.

130. On information and belief, at all relevant times, Mr. Klander's actions and inactions complained of herein occurred within the course and scope of his employment with MMAI.

131. Accordingly, MMAI is liable to Ms. Axelrod for the damages she sustained as a result of Mr. Klander's conduct described herein.

132. Ms. Axelrod has been required to retain the services of counsel to prosecute this matter and, as such, is entitled to an award of her reasonable costs and attorney's fees incurred herein.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

a) For damages in excess of $75,000.00;

b) For an award of pre- and post-judgment interest;

c) For costs and reasonable attorney's fees pursuant to N.R.S. § 41.600 or otherwise;

d) For an award of punitive or exemplary damages; and

e) For any such further relief as the Court may deem proper.

DATED this 19th day of July, 2013.

REISMAN·SOROKAC

/s/ Joshua H. Reisman, Esq.
JOSHUA H. REISMAN, ESQ.
Nevada Bar No. 7152
ROBERT R. WARNS III, ESQ.
Nevada Bar No. 12123

Attorneys for Plaintiff Brett Axelrod